# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL,<br><br>        Plaintiff,<br><br>    v.<br><br>N. SELLIERS, et al.,<br><br>        Defendants. | Case No. 1:18-cv-00420-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S COMPLAINT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, WITHOUT LEAVE TO AMEND<br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DISCHARGING ORDER TO SHOW CAUSE<br>(ECF NO. 11)<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

      Kareem J. Howell ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on March 27, 2018. (ECF No. 1). Plaintiff's complaint concerns a period in March of 2018, when Plaintiff had a dispute with a psychiatric technician that led him to go into a psychotic rage. In the days that followed, Plaintiff threatened to kill the psychiatric technician, punched out the living cell windows using a drinking cup, and was put in a suicide crisis bed for suicide watch. Plaintiff alleges that his constitutional rights were violated during this period as the prison put him in isolated cells and prohibited him from

having his personal property.

The Court has reviewed the complaint and legal standards and recommends to the assigned district judge that Plaintiff's complaint be dismissed for failure to state a claim, without leave to amend. The Court has reviewed the circumstances and the legal standards and recommends finding that the actions described, even if true, would not state a violation of Plaintiff's constitutional rights.

Plaintiff now has twenty-one days to file objections to this order, which will be reviewed by the assigned district judge.

Additionally, the Court will discharge the order to show cause entered on August 28, 2018 (ECF No. 11). In light of Plaintiff's response (ECF No. 12), it is unclear whether Plaintiff failed to exhaust his available administrative remedies. Accordingly, the Court will not recommend dismissing Plaintiff's complaint for failure to exhaust at this time.

## I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff was at all relevant times in the custody of California Department of Correction and Rehabilitation ("CDCR") at California State Prison, Corcoran ("CSP-Corcoran").

Plaintiff begins his complaint by explaining that he has been housed in the mental health segregated security housing unit ("SHU") since 2006. He has been legally diagnosed as suffering from a severe mental disorder specified as bipolar mixed with psychotic features. Plaintiff alleges that his mental illness substantially impairs his thoughts, his perception of reality, his emotional state, and his judgment process. Plaintiff states "most tellingly/importantly it grossly impairs plaintiff's behavior." In the absence of treatment, Plaintiff represents a substantial danger to himself and others.

Plaintiff includes the following statement in the description of "Plaintiff":
> IT SHALL BE SO NOTED: Mental health records reflect the purest truth that plaintiff's oppositional anger and poor impulse control is related to his severe mental illness, he's also vulnerable to being easily provoked and demonstrates explosive responses to stressful situations.

(ECF No. 1, p. 2).

Plaintiff names seventeen individuals as defendants. They include a psychiatric technician, the chief psychologist, administrative officials, correctional officers, and the Warden of CSP-Corcoran.

3

On Thursday, March 8, 2018, Defendant N. Selliers was administering the evening psy-medication to inmates confined to their living cells. Defendant Selliers was escorted by an unidentified correctional officer. She intentionally passed Plaintiff's living cell. Plaintiff approached his cell and called loudly to Defendant Selliers to remind her that he was supposed to receive medication.

Defendant Selliers immediately returned to Plaintiff's living cell with the escort officer and stated to Plaintiff "stop calling out my go[d]-damn name like you're crazy, [I] passed you up because you're disrespectful to officer[] HOWELL." Plaintiff replied, "What do me being disrespectful to officers have to do with you and me receiving my psy-medication?" Defendant Selliers responded, "We're friends, and we're a team, you disrespect them and you're disrespecting me, it's that simple."

Plaintiff then addressed the escort officer, saying "Sir, [I] need to receive my medication, or [I]'m going to file a complaint on both of you, this psy-tech has been refusing to give me my psy-meds all week, this is going to stop today, or [I]'m writing y'all up." The escort officer turned to Defendant Selliers and asked her if Plaintiff has medication coming. She said, "YES." The escort officer then proceeded to open Plaintiff's living cell door foodport so that he could receive his medication.

Defendant Selliers then told the escort officer that she believed Plaintiff was going to assault her. Plaintiff said "Oh, now you feel like [I]'m assaultive, what's your real problem?"

The escort officer gave Plaintiff a direct order to move to the back of his cell. Plaintiff complied. The cell door foodport was opened by the officer, and Defendant Selliers placed Plaintiff's medication on the open foodport and backed away.

Plaintiff came forward and received his psy-medication. Defendant Selliers then said that she was going to write Plaintiff up for manipulating staff. Plaintiff alleges that, "Hearing this new claim[,] the plaintiff immediately felt provoked, and went into a psychotic rage, unable to control himself plaintiff started experiencing suicidal and homicidal thoughts." (ECF No. 1, p. 6). Plaintiff was then escorted to a holding cage.

After waiting for 25 minutes in the holding cage, Defendant A. Selliers approached Plaintiff to conduct a confidential mental health 7219 medical evaluation. She asked, "Are you suicidal?" Plaintiff replied, "Yes." She asked, "Do you have a plan?" Plaintiff replied, "no." She asked, "Are you homicidal?" Plaintiff replied "Yes." She asked, "Who are you homicidal toward?" Plaintiff replied "I feel like killing the psy-tech."

Plaintiff was then escorted to the emergency room to receive a mental health assessment. It was conducted by a licensed psychologist who concluded that Plaintiff did not present a threat and/or danger to himself or others. Plaintiff was allowed to return to his living cell.

The next day, Friday, March 9, 2018, Plaintiff was seen by another prison licensed psychologist who concluded that Plaintiff did not present a threat or danger to himself or others, and was cleared to return to his living cell.

On Sunday, March 11, 2018, Plaintiff was pulled out of his living cell and escorted to the correctional sergeant's office. Plaintiff learned that Defendant Selliers had submitted a copy of the confidential medical report to custody staff, along with a rules violation report accusing Plaintiff of making a verbal threat to kill her.

On Monday March 12, 2018, Plaintiff was lured out of his living cell by multiple defendant correctional officers. Plaintiff was informed that he had to attend a one on one session with a mental health provider. Plaintiff exited his living cell, escorted by Defendants Uchi and Rodriguez. Plaintiff was taken to a secluded area located in the mental health housing unit, where he was met by Defendant Correctional Sergeant Garvacio. Defendant Garvacio told Plaintiff he was defendant Selliers' male companion, and that if Plaintiff had a personal problem with her, Plaintiff would have a major problem with him. Garvacio then grabbed Plaintiff by his neck forcefully and asked Plaintiff "if he understood?"

Plaintiff was then escorted to another housing unit and informed by Defendant Garvacio that the facility captain, Defendant S. Babb, as well as Facility Lieutenants Defendants Petterson and Tumacdor, had ordered him to re-house Plaintiff. Defendants Garvacio, Uchi,

and Rodriguez then placed Plaintiff into a "naked living cell" with only the clothing that Plaintiff had on.

Plaintiff did not have access to his personal property. He also did not have a state mattress, bedding, toilet paper, soap, toothpaste, toothbrush, or writing materials. At dinner time, Plaintiff was denied a meal. Plaintiff was also denied complaint forms. He was told that Defendant Garvacio told the officers not to issue Plaintiff anything. Plaintiff was also denied his evening psychiatric medication.

At 8:35 pm, eight hours after being confined in the cell, Plaintiff became suicidal and felt a strong need to end his life. Plaintiff told the custody officers of his suicidal thoughts. Defendant Garvacio arrived at Plaintiff's cell and told Plaintiff that he needed to calm down and take a deep breath. Plaintiff became so overwhelmed with mental anguish that he had a psychotic reaction and punched out the living cell windows utilizing a drinking cup.

At approximately 9:00 p.m., Plaintiff was escorted to the prison emergency room and evaluated by a mental health care provider. He was then admitted into the suicide crisis bed for suicide watch.

On Tuesday, March 13, 2018, at approximately 6:00 p.m., Plaintiff returned to his new living unit from the suicide crisis bed. He was re-housed in a completely empty living section without any other inmates. Plaintiff again asked for complaint forms and was denied.

On March 15, 2018, Plaintiff received his personal property back. Plaintiff then wrote to various administrative officials, placing them on legal notice that he intended to file lawsuits against them and others at CSP-Corcoran.

### III. ANALYSIS

Plaintiff asserts claims for "psychological abuse, inadequate mental health care, deliberate indifference to a serious mental health need, employee misconduct, racial profiling/racial discrimination, and conspiracy to violate Plaintiff's First Amendment rights."

#### A. Psychological Abuse and Employee Misconduct

The constitution does not specifically address psychological abuse or employee misconduct. Such a claim is evaluated under the Eighth Amendment's prohibition against cruel

and unusual punishment.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, prison officials have a duty to ensure that prisoners are provided adequate personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. Id. The objective prong requires a showing that the condition or deprivation was sufficiently serious to form the basis for an Eighth Amendment violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). When considering the conditions of confinement, a court should consider the amount of time to which the prisoner was subjected to the condition. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837. Mere negligence is insufficient to show a violation of the Eighth Amendment. Id. at 835-36.

Allegations of verbal harassment generally do not state a viable claim under section 1983. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). To state a viable claim for verbal harassment, a prisoner must show that the offending comments were "gross even for a prison setting and were calculated to and did cause him psychological damage." Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996).

Even assuming the facts alleged in the complaint are true, Plaintiff has not stated a cognizable claim for cruel and unusual punishment under the Eighth Amendment. Plaintiff's complaint alleges a dispute with a defendant, including her accusing him of disrespecting other officers. It also alleges that he was housed for approximately eight hours in a "naked living cell" without any of his property of any comforts, such as a mattress. He also alleges that he was re-housed in a living cell in a completely empty living section. He alleges that he was deprived of his personal property for three days. Furthermore, he was told by a correctional officer that "if plaintiff had a personal problem with [Defendant Selliers], Plaintiff would have a major problem with him."

The Court has reviewed all allegations and finds that they do not rise to the level of cruel and unusual punishment under the legal standards. Plaintiff was at times deprived of his property and comforts, but the deprivations were limited in time. A single meal was missed. Plaintiff was not given a mattress during daytime hours. Correctional officers spoke sternly toward him. But Plaintiff was never assaulted or otherwise physically hurt during this process. The words said were not "gross for a prison setting or calculated to cause psychological damage." His conditions did not rise to the level of an Eighth Amendment violation.

Moreover, Plaintiff's allegations suggest that the actions taken were done in response to threats by Plaintiff. Plaintiff himself alleges that "plaintiff's oppositional anger and poor impulse control is related to his severe mental illness, he's also vulnerable to being easily provoked and demonstrates explosive responses to stressful situations." (ECF No. 1, p. 2). When Defendant Selliers told Plaintiff she would write him up for manipulating staff, Plaintiff states that "plaintiff immediately felt provoked, and went into a psychotic rage, unable to control himself plaintiff started experiencing suicidal and homicidal thoughts." (Id. at 6). Plaintiff also alleges he told Selliers, the psy-technician, that he was feeling homicidal and felt "like killing the psy-tech." (Id. at 7). Plaintiff's own presentation of facts appears to establish that Defendants were acting in response to Plaintiff's behavior, and not in a way that was deliberately indifferent to his safety.

///

**B. Deliberate Indifference to Medical Needs**

Plaintiff also alleges that Defendants provided inadequate mental health care and were deliberately indifferent to his mental health needs.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at

106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

Plaintiff alleges that he was at certain times deprived of his psychiatric medication, although during the initial incident he was eventually given his medication. It is unclear what other care Plaintiff believes he should have received.

Plaintiff's complaint fails to state facts that would establish an unconstitutional level of care. Plaintiff's failure to get his medication only occurred a small number of times. Moreover, Plaintiff describes many times during this short period when he received mental health care including having an immediate mental health 7219 medical evaluation (in which he said he was suicidal and homicidal), being taken to the emergency room for a mental health assessment by a licensed psychologist, meeting with another prison licensed psychologist, and later being taken to the suicide crisis bed for a suicide watch. These allegations, even if true, do not establish that any defendant violated the Eighth Amendment by being deliberately indifferent to Plaintiff's serious medical needs.

### C. Racial Profiling/Discrimination

The equal protection clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439(1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y

Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts that would show that any defendant discriminated against him based on his race. Plaintiff does not allege that any defendant said anything racially discriminatory, or treated him differently than any similarly situated person. On the contrary, Plaintiff alleges actions that demonstrate defendants were acting in response to Plaintiff's actions and threats including having psychotic episodes, stating that he was homicidal, and punching out the living cell windows utilizing a drinking cup.

**D. First Amendment Claim**

Plaintiff also alleges that there was a conspiracy to violate his First Amendment rights.

The First Amendment, as incorporated against the states by the Fourteenth Amendment, prohibits states from "abridging the freedom of speech." U.S. Const. amend. I. Although inmates enjoy a First Amendment right to send and receive mail, Witherow v. Paff, 52 F.3d 264, 265 (9th Cir.1995), these rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir.1987) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)). A regulation that impinges on an inmate's First Amendment rights is valid if that regulation "'is reasonably related to legitimate penological interests.'" Frost v. Symington, 197 F.3d 348, 354 (9th Cir.1999) (citing Turner, 482 U.S. at 89, 107 S.Ct. 2254). Deterring criminal activity and maintaining prisoner security are legitimate penological interests that justify regulations on prisoner mail. Nordstrom, 762 F.3d 903, 906 (9th Cir. 2014); O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir.1996).

Although a prisoner must "exhaust his administrative remedies before filing a lawsuit concerning prison conditions," Sapp v. Kimbrell, 623 F.3d 813, 821 (9th Cir. 2010) (citing 42 U.S.C. § 1997e(a) ), prison grievance procedures do not create substantive rights enforceable under the Due Process Clause. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.

1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause.").

Here, Plaintiff alleges that he was deprived of all personal property for three days. During this time, he repeatedly requested a prison complaint form to challenge the report the mistreatment. The Court finds that this deprivation did not constitute a violation of the First Amendment under these legal standards. Although an inmate has a First Amendment right to send and receive mail, that right may be curtailed to achieve legitimate correctional goals or maintain prison security. Here, the prison took away his personal property on the day he "became so over-whelm with mental anguish that he had a psychotic reaction and punched out the living cell windows utilizing a drinking cup." (ECF No. 1, p. 9). Later that same evening, he was evaluated by a mental health care provider and admitted into the suicide crisis bed for suicide watch. Id. This context shows that Defendants had a legitimate security interest in not allowing Plaintiff to have his personal property, including implements to write letters, so he could not use any implements to harm himself or anyone else.

Moreover, the deprivation was brief. Plaintiff received his personal property back on March 15, 2018, three days later. He immediately wrote to "each of the head prison administrative officials reporting the mistreatment that he was subjected to." (Id. at 10). He also mailed letters threatening legal action to six defendants that day. Given that Plaintiff was deprived of his property for a short time, and was able to send letters immediately after that period, the Court finds that the brief time without his property is not enough to state a cognizable claim for violation of the First Amendment.

Plaintiff's allegation that he did not receive complaint forms for the prison grievance system also does not state a cognizable claim under the legal standards set forth above. The failure to receive prison complaint forms would be relevant to any defense for failure to exhaust his administrative remedies before filing suit. But the lack of an available grievance procedure does not independently state a constitutional violation.

## IV. CONCLUSION AND RECOMMENDATION

The Court has screened the complaint and finds that it fails to state a cognizable claim

under the relevant legal standards.

The Court does not recommend granting leave to amend. Plaintiff clearly alleged the circumstances underlying his complaint, and the Court has found that those circumstances do not state a constitutional violation for the reasons described in this order. For that reason, leave to amend would be futile.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's claims be DISMISSED with prejudice for failure to state a claim;[1] and
2. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that:

1. The order to show cause entered on August 28, 2018, is DISCHARGED; and
2. The Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **September 27, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[1] This Court believes this dismissal would be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Coleman v. Tollefson, 135 S. Ct. 1759, 1763 (2015).

13